Jeffrey Schanback, Esq. Informal Opinion New York City Housing Authority No. 95-44 Law Department 75 Park Place, New York, N Y 10007
Dear Mr. Schanback:
You have asked for an opinion on the scope of State Finance Law § 165.1.[1] See, L 1995, ch 83.That section, which was originally enacted in 1991, provides that
 Except as hereinafter provided, the state and any governmental agency or political subdivision or public benefit corporation of the state shall not purchase or obtain for any purpose any tropical hardwoods or tropical hardwood products, wholesale or retail, in any form.
State Finance Law § 165(2)(a).
"Tropical hardwood" is defined as "any and all hardwood, scientifically classified as angiosperm, that grows in any tropical moist forest". State Finance Law § 165(1)(b). The definition goes on to state that "tropical hardwoods shall be the following species" and includes a list of approximately forty species. Id. You have pointed out that the first sentence of the definition embraces many tropical hardwoods that are not included on the list. You ask whether the list of species included in the statute is intended to be exhaustive or simply illustrative.
Initially, we note that the statute contains two lists. Section 1(a) defines non-tropical hardwood species as
 any and all hardwood that grows in any geographically temperate regions, as defined by the United States Forest Service, and is similar to tropical hardwood in density, texture, grain, stability or durability.
The section goes on to state
 Non-tropical hardwoods, the use or purchase of which shall be preferred under this article, shall include, but not be limited to the following species:
. . .
A list of species follows. The list of non-tropical hardwoods is expressly stated to be illustrative and not exclusive. By contrast, the section dealing with tropical hardwoods does not by its terms include species that are not on the list. The Legislature's goal was to promote use of non-tropical hardwoods as substitutes for the woods it barred the State from purchasing. A broad definition of acceptable substitutes is in accord with that goal. If the Legislature intended the list of tropical hardwoods in section 165(1)(b) to be illustrative and not exhaustive, presumably it would have used the same language it employed in section 165(1)(a).
A narrow, precise definition of the prohibited products is in accord with the legislative scheme. During debate on this legislation in the Assembly, the sponsor stated
 what we are doing here is saying that these particular species which have been reviewed with people at the Department of Environmental Conservation, experts in forestry, that these species should not be used unless there is no acceptable substitute.
Assembly Debate, July 3, 1991, p 49. He also stated that
 the state in setting an example, should not purchase these particular species of woods because they come from a sensitive area and we do not want to encourage these species being destroyed.
Id., p 63. He also recognized that the bill was only a start on managing a complex problem. Id., p 64.
We conclude that the statute was intended to prohibit the purchase of only those species of tropical hardwoods listed in the statute.
You also note that the prohibition contained in subsection 2 of the statute is subject to a number of exceptions. Section 165(2)(b)(i) states that the prohibition on purchase of tropical hardwood shall not apply to "any hardwoods purchased from a sustained, managed forest". You note that the phrase "sustained, managed forest" is not defined in the statute and ask for clarification in order to determine from whom you may purchase such products.
Legislative history provides little guidance on this question. A letter from one of the sponsors to the Governor's counsel states:
 Subdivision 3 of the bill provides exemptions that are reasonable and do not penalize countries that are trying to manage their forest products industry. Brazil is currently certifying their exports of tropical hardwoods that come from the managed forests currently under United Nations supervision. Vendors can easily ascertain and certify that the products come from managed forests.
23, 1991 letter to the Governor's Counsel from Assemblyman G. Oliver Koppell, Bill Jacket, L 1991, ch 663. No definition of managed forests is included in section 165, nor did we locate any statutory definitions. We note that a number of independent non-profit organizations maintain wood products certification programs that evaluate the environmental performance of producers, including whether they practice sustained yield management. See, K. Koenig "Green Labelling Taking Root" Wood Wood Products, Vol. 99, No. 3, March 1994; R. Vlosky and L. Ozanne, "Consumer Anxiety Fuels Certification Movement", Wood Technology, Vol. 122, No. 2, March 1995.[2]
We conclude that State Finance Law § 165 prohibits purchase of only those species of tropical hardwoods listed in the statute. The exemption for products from "a sustained, managed forest" is not defined in the statute.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
SIOBHAN S. CRARY
Assistant Attorney General
[1] Formerly 167-b, prior to enactment of new article 11.
[2] The Forest Stewardship Council has begun accrediting certification organizations based on a number of criteria including adherence to guidelines that define forest stewardship as environmentally appropriate, socially beneficial and economically viable forest management. See, J. Barrett, "Accreditation Offers Producers Cleaner Image", Pulp Paper International, Vol. 36, No. 12, December 1994.